1999 OK 75

**Willie B. ROWLAND, Petitioner,**

v.

**CITY OF TULSA and The Oklahoma Workers' Compensation Court, Respondents.**

No. 88,288.

Supreme Court of Oklahoma.

Sept. 21, 1999.

Willie B. Rowland, Tulsa, Oklahoma, Pro Se Petitioner.

Susan H. Jones, Tulsa, Oklahoma, For Wilson Jones, P.C., specially appearing.

HODGES, J.

¶1 The issue in this case is whether the Workers' Compensation Court's order on which this appeal is based, in so far as it purports to adjudicate the amount of attorney fees, is an appealable order subject to this Court's review. We find that the issue of the proper amount of attorney fees remains pending before the Workers' Compensation Court and, as such, is not ripe for review by the appellate courts.

**I. Facts**

¶2 On April 2, 1992, the Workers' Compensation Court found Willie B. Rowland (Rowland) to be permanently totally disabled and awarded Rowland $208.27 per week in compensation and back compensation of $2,707.51. Wilson Jones (Jones), the respon-

dent in this appeal and Rowland's attorney at the time of the award, was paid a twenty percent lump sum fee of $20,827.00 by Rowland's employer, the City of Tulsa (City). The City was to recoup the lump-sum attorney fee payment by deducting ten percent of Rowland's weekly award until the total was recovered.

¶ 3 On February 16, 1996, Rowland and the employer entered into an agreement whereby Rowland was paid $135,000.00 in exchange for releasing the City from the remainder of the payments under the 1992 order. The agreement provided for a reduction of the $135,000.00 by twenty percent for attorney fees. The settlement worksheet, signed by both Rowland and Jones, shows that Jones was paid attorney fees of $22,-840.00 out of the $135,000.00 settlement. The $22,840.00 represents the amount of $27,000.00, which is twenty percent of $135,-000.00, less the amount that Rowland had reimbursed the City of the $20,827.00 lump-sum fee previously paid to Jones.

¶ 4 Before the order approving the agreement was filed of record, Rowland sent a letter to the administrator and the presiding judge for the Workers' Compensation Court. The letter was received by both the judge and the administrator on March 6, 1996. In his letter, Rowland alleged that under the agreement his attorney would receive more than the statutorily allowed twenty percent of the award. On March 12, 1996, an order was filed approving the joint settlement agreement.

¶ 5 Rowland's letter was treated as a motion to modify the order approving the joint settlement, and a hearing was held on May 30, 1996. Four months later, on September 27, the trial tribunal ruled that it did not have authority to modify the order approving the settlement more than twenty days after the order was mailed to the parties. The Court of Civil Appeals sustained the trial court's decision denying Rowland relief. This Court granted certiorari.[1]

## II. Analysis

¶ 6 The Workers' Compensation Court treated Rowland's letter as a motion to modify its order approving the settlement agreement. Neither the fact that the request for relief was in the form of a letter nor the treatment given it by the Workers' Compensation Court is determinative of its true nature. Rowland states in the letter that he is asking for a hearing on the amount of attorney fees and stating that under the agreement his attorney would receive more than the statutory maximum. The letter not only requests a hearing but revokes Rowland's consent to the amount of attorney fees as recited in the joint agreement.

¶ 7 The basis of a joint petition settlement is the parties' agreement to its terms. After Rowland suspected that the settlement allowed an attorney fee in excess of the statutory maximum,[2] he withdrew his consent to the amount of attorney fees and requested review of the matter. After he withdrew his consent to the amount of attorney fees, the joint petition settlement in so far as it settled the amount of attorney fees was no longer before the trial tribunal for its approval.

¶ 8 In cases such as this where the issue of attorney fees is in controversy, a judge of the Workers' Compensation Court must hear and consider all the evidence pertaining to the issue.[3] After the hearing, the judge enters an order determining the proper amount of attorney fees.[4] Only after an order adjudicating the issue is entered does the matter become ripe for appeal.[5] Because, in the present case, the amount of attorney fees was never properly presented for approval to or adjudicated by the Workers' Compensation Court, the order of March 12, 1996, was a nullity as to attorney fees, and this Court lacks appellate jurisdiction of the matter.

¶ 9 The trial tribunal and the Court of Civil Appeals both found that the Workers' Compensation Court was without authority to modify the order under section 3.6 of title 85. Section 3.6 states that an order of the Workers' Compensation Court becomes final twen-

1. The City was named as a respondent in the Petition for Review but filed a pleading disclaiming an interest in the appeal and asserting that the controversy is between Rowland and Jones.

2. Okla. Stat. tit. 85, § 30 (Supp.1992).

3. *Id.* at §§ 3.6, 30.

4. *Id.* at § 3.6.

5. *Id.*

ty days after a copy is mailed to the parties.[6] Because Rowland revoked the part of the joint petition settlement addressing attorney fees before an approval order was filed, the twenty day time period did not begin to run as to the matter of the amount of attorney fees.[7] Thus, the Workers' Compensation Court and the Court of Civil Appeals erred.

### III. Conclusion

¶ 10 Because the order appealed from in the present case was not ripe for review by the appellate courts as to the amount of attorney fees, the Court of Civil Appeal was without jurisdiction to determine the merits of the appeal. The Court of Civil Appeals' opinion is vacated. The appeal is dismissed for lack of an appealable order. The letter seeking review should be treated as revoking the joint petition settlement as to the amount of attorney fees, leaving the issue pending before the Workers' Compensation Court.

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS' OPINION VACATED; APPEAL DISMISSED FOR LACK OF APPELLATE JURISDICTION; MATTER REMANDED FOR FURTHER PROCEEDINGS.

¶ 11 SUMMERS, C.J., HARGRAVE, V.C.J., LAVENDER, SIMMS, KAUGER, WATT, JJ.—concur.

¶ 12 OPALA, J.—dissents.

OPALA, J., dissenting.

¶ 1 The court vacates today the trial tribunal's order *refusing* to consider—for *per*ceived want of jurisdiction over the § 84 approval order [1]—the claimant's *post-settlement application* for a fee-quantum inquiry. It remands the claimant's request with directions to grant a hearing. While I *do not recede* from the court's *ultimate* disposition of the cause by today's remand, I write *in dissent* to afford the Workers' Compensation Court *and* its bar some insights into the underlying problem at hand and to suggest several solutions that would better secure the stability and finality of settlements. My refusal to join the court's opinion is prompted by grave concerns over its anemic treatment of the *critical* analytical underpinnings for vacating the trial tribunal's order. Today's vacation will tend to eclipse *rather than unveil* the urgent need for an improved ground-level supervision of the § 84 settlement process.[2]

¶ 2 The court's conclusion that the counsel-fee issue remains pending before the trial tribunal seems to rest on its mistaken notion that *this claimant had timely revoked his earlier consent to a twenty-percent fee. That is not my view.* Claimant's 6 March 1996 letter to the trial tribunal reveals only that there was *then* a pending controversy in which he stood in a posture adversarial to that of his lawyer over the quantum to be deducted from the achieved settlement. Bearing no stamp that would provide certified proof of its mailing, the March 12 order *facially lacks the statutorily mandated indicium of finality* for want of compliance with the provisions of 85 O.S.Supp.1994 § 3.6.[3] That deficiency is plainly apparent from an

---

**6.** *Id.*

**7.** *Higley v. Schlessman*, 1956 OK 18, ¶ 0, 292 P.2d 411, 412, provides:

> 1. The State Industrial Commission may vacate, set aside, modify or change any order or award within 20 days after such order or award has been entered and a copy thereof sent to the parties and this rule applies to awards entered by the Commission on approval of joint petition settlement....

**1.** The final compromise-of-claim process prescribed by the provisions of 85 O.S.Supp.1994 § 84 (*infra* note 9) is commonly called the "joint-petition settlement". In this writing I refer to that statute-authorized procedure either by its long-time practitioners' parlance or as the § 84 settlement process.

**2.** For an explanation of the phrase "the § 84 settlement process", see the text of footnote 1, *supra.*

**3.** *See* the terms of 85 O.S.Supp.1994 § 3.6 (providing that a decision of the Workers' Compensation Court does not become final until twenty days *after a copy is sent* to the affected parties). The pertinent terms of 85 O.S.Supp.1994 § 3.6 are:

> C. The order, decision or award of the Court *shall be final* and conclusive upon all questions within its jurisdiction between the parties, *unless*, within twenty (20) days *after a copy of such order, decision or award has been sent by the Administrator to the parties affected*, an action is commenced in the Supreme Court of the state, to review such order, decision or award. Any order, decision or award made by a judge of the Court shall be considered as

inspection of the trial tribunal's record.[4] *The critical fact here is not that the letter-request for a hearing had timely reached the trial tribunal,* but rather that the fee allocation (recited in the settlement-approval order) cannot operate as a final adjudication imposing a cognizance-anchored bar of the fee quantum's further re-examination in the trial tribunal. The § 3.6 twenty-day *jurisdictional cutoff* had *neither* been triggered *nor* had its bar dropped when the assigned judge reached for hearing the claimant's letter-request.[5] In short, *critical to today's disposition by remand is not the time claimant's letter was filed,* but the trial tribunal's then-retained *jurisdiction over its earlier March 12 order.*

## I

## THE ANATOMY OF TENDERED CONTROVERSY

¶ 3   Claimant sustained on-the-job injuries when working for the City of Tulsa. Finding his impairment to be permanent and total, the Workers' Compensation Court allowed him benefits and *allocated a twenty-percent attorney's fee authorized by the terms of 85 O.S.Supp.1994 § 30.*[6] The employer and claimant *later* entered into *an agreement* (on 16 February 1996) *for a final lump-sum settlement.* By the trial tribunal's 12 March 1996 joint-petition approval order, *which was never sent to the parties, claimant's attorney was allowed twenty-percent of the settlement*

final under the provisions of this section unless appealed to the Workers' Compensation Court sitting en banc as provided for in subsection A of this section. . . .
(emphasis supplied).
The quoted text was not changed by the 1997 amendment to the statute. *See also Scrappers, Inc. v. Wilson,* 1990 OK 42, ¶ 4, 790 P.2d 1116, 1116–17.

4.   Jurisdictional infirmities apparent from an inspection of the trial tribunal's record are deemed to be facially vitiating defects. *Union Indemnity Co. v. Saling,* 166 Okl. 133, 26 P.2d 217, 224 (1933).

5.   No bar of finality can ever attach to an issue that was not *finally* adjudicated.

6.   The pertinent terms of 85 O.S.Supp.1994 § 30(D) are:
D.   Claims for legal services for temporary disability awards shall be paid periodically. Claims for legal fees for permanent total dis-

*amount.* In his 6 March 1996 letter to the presiding judge, claimant sought an adversarial hearing for determination of the fee's quantum, urging that his lawyer's allocated fee was excessive. The Workers' Compensation Court concluded (by its order of 27 September 1996) the fee amount set aside by the settlement-approval order could not be modified because more than twenty days had passed since the order's entry. The Court of Civil Appeals sustained the trial tribunal's ruling. The case is now before us on claimant's certiorari quest.

## II

*FERGUSON*[7] *AND SNYDER*[8]—THE TWO CASES WHICH MOST RECENTLY PRONOUNCED THE ` 20-DAY JURISDICTIONAL CUTOFF— DO NOT APPLY HERE TO BAR THE TRIAL TRIBUNAL'S COGNIZANCE OVER THE FEE–QUANTUM CONTROVERSY; BY ITS FAILURE TO SEND CLAIMANT A COPY OF THE SETTLEMENT–APPROVAL ORDER, THE TRIAL TRIBUNAL RETAINED COGNIZANCE OVER THE FEE DISPUTE GENERATED BY CLAIMANT'S MARCH 6 LETTER

¶ 4   Recent jurisprudence—*Ferguson and Snyder*—teaches that the Workers' Compensation Court's cognizance over its reviewable orders[9] is limited by the twenty-day period

ability awards shall be paid periodically at the rate of twenty percent (20%) of each weekly check to the claimant until the attorney fee is satisfied, based upon a maximum of four hundred (400) weeks of compensation. . . .

7.   *Ferguson v. Ferguson Motor Co.,* 1988 OK 137, 766 P.2d 335.

8.   *Snyder v. Smith Welding & Fabrication,* 1986 OK 35, 746 P.2d 168.

9.   The pertinent terms of 85 O.S.Supp.1994 § 84(A) are:
. . . If the Court decides it is for *the best interest of both parties to said petition* that a final award be made, a decision shall be rendered accordingly and the Court may make an award that shall be final as to the rights of all parties to said petition and thereafter the Court shall have no jurisdiction over any claim for the injury or any results arising from same. . . .
(emphasis supplied).

prescribed by law for filing a review petition. Both of these cases deal with the trial tribunal's jurisdiction over those orders, a copy of which was sent to the parties as required by the terms of 85 O.S.Supp.1994 § 3.6.[10] The § 3.6 jurisdictional bar, which applies with equal force to settlements as well as to products of adversarial process,[11] is an across-the-board prerequisite for ascribing decisional finality. Because the joint-petition approval orders are *mandatory*[12] as well as *appealable*,[13] the provisions of § 3.6 (requiring that reviewable orders be mailed to all parties) govern the § 84 proceedings. **It is hence clear that neither *Ferguson* nor *Snyder* bars the trial tribunal's consideration of the fee-quantum controversy here.**

¶ 5 When the assigned judge reached the fee-quantum issue for hearing, the twenty-day time bar had not yet dropped—nor has it ever been triggered by the act of sending to the parties a copy of the approval order.[14] *Failure to send the approval's copy prevented that order from attaining finality status for the fee-quantum controversy between claimant and his lawyer.*[15] Moreover, mailing of the order's copy to the claimant's lawyer alone would not have been enough to terminate the trial tribunal's cognizance *since the lawyer was then in known conflict with his client.*[16]

¶ 6 Because the norms that govern compensation of workers for an on-the-job injury or death constitute *public law*,[17] agreements between employers and employees can never attain legally binding force without the trial tribunal's approval.[18] Approval of the § 84 settlement is not merely a ministerial function. As a judicial act that is *absolutely indispensable to the agreement's legal viability*, an approval order[19] *must* be treated very much like other judicial acts of the trial tribunal and processed in a conformable manner.

## III

## AN ASSIGNED TRIAL JUDGE WILL ON REMAND HAVE JURISDICTION TO EXAMINE INTO THE FEE–QUANTUM CONTROVERSY IN A HEARING IN WHICH CLAIMANT'S LAWYER WILL ACT AS HIS CLIENT'S ADVERSARY

¶ 7 The trial judge found that she could not modify the fee's quantum because more than twenty days had passed since the March 12 order's entry. She doubtless overlooked the fact that the mechanism which triggers the onset of the twenty-day period was never set in motion. That bar, which is raised by *sending a copy of the approval order to the affected parties*, automatically drops twenty days later.[20] As no copy had been sent to the claimant when his March 6 letter-request came for hearing, the twenty-day jurisdic-

**10.** For the pertinent terms of 85 O.S.Supp.1994 § 3.6, see *supra* note 3.

**11.** *Ferguson, supra,* note 7 at ¶ 11, at 338 n. 10 ("the rules governing appellate review of final orders made in an adversarial setting apply with equal force to the review of decisions approving settlement of claims by joint petition" (§ 84 settlement proceedings)).

**12.** *Texas Pacific Coal & Oil Co. v. Morrison,* 148 Okl. 205, 298 P. 270, syl. 1 (1931) (there is no settlement unless it is approved).

**13.** *H.V. Higley v. Schlessman,* 1956 OK 18, 292 P.2d 411, 414; *Conrad v. State Industrial Commission,* 181 Okl. 324, 73 P.2d 858, 862 (1937) (awards made upon a joint-petition agreement under 85 O.S.Supp.1994 § 84 are subject to review by this court in the same manner as any other award or decision).

**14.** Insofar as this record shows, that jurisdictional cutoff has not yet been triggered nor has it ever expired.

**15.** *Cassidy v. Dielsen,* 1977 OK 14, 560 P.2d 188, 189 syl. ("To constitute an effective award or decision the same must be filed and a copy thereof mailed to the parties affected").

**16.** For an explanation of the common-law rule that, when conflict between them arises, lawyers cease to be their clients' agents, see *infra* note 40.

**17.** *PFL Life Ins. Co. v. Franklin,* 1998 OK 32, 958 P.2d 156, 164 n. 21; *Reynolds v. Special Indem. Fund,* 1986 OK 64, 725 P.2d 1265, 1270; *Special Indem. Fund v. Reynolds,* 199 Okl. 570, 188 P.2d 841, 842 (1948).

**18.** *Morrison, supra* note 12 at 270 syl. 1.

**19.** *Id.*

**20.** For the pertinent terms of 85 O.S.Supp.1994 § 3.6, see *supra* note 3.

tional bar had neither been raised nor allowed to drop.

¶ 8 An assigned judge will hence be free on remand to examine into the fee-quantum controversy in a hearing in which the claimant's lawyer will act as his client's legal adversary.

## IV

## WHILE GENERALLY A REVIEWING COURT SHOULD NEITHER ADDRESS NOR SPECULATE ON ISSUES UNNECESSARY TO REACH ITS DISPOSITION OF THE CASE, IT MUST IN THIS CAUSE NOTICE THE PRESENCE OF SEVERAL DISTURBING PROCEDURAL INFIRMITIES, ALL HAVING THE POTENTIAL SERIOUSLY TO UNDERMINE THE STABILITY AND FINALITY OF THE § 84 SETTLEMENT PROCESS

¶ 9 By the provisions of Art. 7 § 6, Okl. Const.,[21] this court has been vested with the constitutional responsibility for the day-to-day operations of all courts placed in a position subordinate to this power. Acting as a

§ 6 supervisor of the judiciary, this court is duty-bound *to take notice of,* and *then to direct* the Workers' Compensation Court's attention to, serious procedural infirmities in that tribunal's handling of § 84 settlements.

¶ 10 Revealed to us by this record are *three serious deficiencies* in the present handling of the § 84 settlement process: (1) the current practice does not require pre-approval trial-level inquiry into the claimant's on- or off-the-record[22] waiver[23] of a fee-quantum hearing; (2) copies of the trial tribunal's joint-petition approval orders are neither mailed to counsel of record nor to unrepresented parties; and (3) the trial tribunal appears to have no system for monitoring filings made anterior to the approval order's entry in those cases in which the § 84 settlement process remains *sub judice.*

### A.

### Lack Of The Claimant's On- or Off–The–Record Waiver Of A Fee–Quantum Hearing

¶ 11 There is a *serious procedural gap* in the internal processing of joint-petition settlements[24] which may, as it had done

---

**21.** The pertinent terms of Art. 7 § 6, Okl. Const., are:

Except with reference to the Senate sitting as a Court of Impeachment and the Court on the Judiciary, *general administrative authority over all courts in this State,* including the temporary assignment of any judge to a court other than that for which he was selected, *is hereby vested in the Supreme Court . . . .*
(emphasis supplied).
*See also* the terms of Rule 1.17 (Case Management, Assignment, and Fast Track Docket), Oklahoma Supreme Court Rules, 12 O.S.1997, Ch. 15, App. 1:
(I) The workload of the Supreme Court falls into thirteen categories:
* * *
6. original jurisdiction for the exercise of managerial powers and operational control under Art. 7, Sec. 6, Okla. Const.;
*Eberle v. Dyer Constr. Co.,* 1979 OK 49, ¶ 26, 598 P.2d 1189, 1192.

**22.** For an explanation of what is an "on-the-record" waiver, see *infra* note 30; for a definition of "off-the-record" waiver, see *infra* note 34.

**23.** *Waiver is the intentional relinquishment of a known right. Raines v. Independent School Dist. No. 6 of Craig County,* 1990 OK 68, 796 P.2d 303, 305 n. 3; *Guinn v. Church of Christ of Collinsville,* 1989 OK 8, 775 P.2d 766, 777; *Sandpiper North Apartments, Ltd. v. American Natl. Bank*

*and Trust Co. of Shawnee,* 1984 OK 13, 680 P.2d 983, 990 n. 15; *Faulkenberry v. Kansas City Southern R. Co.,* 1979 OK 142, ¶ 6, 602 P.2d 203, 206–07. *See also Schneckloth v. Bustamonte,* 412 U.S. 218, 234–35, 93 S.Ct. 2041, 2051–52, 36 L.Ed.2d 854 (1973); *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). *"Consent"* and *"waiver"* are not synonymous terms. The former, unlike the latter, does not require full knowledge of the rights that are given up. "Consent" is a concept related to private contract rights. Workers' compensation law is public law and the rules that govern private contracts are not applicable. *PFL Life Ins., supra* note 17 at 164; *Reynolds v. Special Indem. Fund, supra* note 17 at 1270; *National Gypsum Co. v. Brewster,* 1969 OK 185, 461 P.2d 593, 596; *Special Indem. Fund v. Reynolds, supra* note 17 at 842.

**24.** According to the Workers' Compensation Court Rules, (a) there must be a complete transcript of the proceedings *before* the trial tribunal can pass on whether to approve the § 84 settlement, (b) the record must reflect *the claimant's understanding of the agreement's legal effect and* (c) the settlement hearing's transcript must be prepared within 90 days of the hearing. Rule 28(A) and (D), Workers' Compensation Court Rules, 85 O.S.Supp.1997, Ch. 4, App. The pertinent terms of Rule 28(A) and (D) are:

here,[25] leave the fee quantum open-ended and hence keep it suspended as an unresolved issue far beyond the point of final accord between the employer and its employee.[26] The flaw can be removed by requiring that when eliciting testimony for the settlement's approval *every claimant's lawyer* (1) *inform* the client (a) of the total fee amount that will be deducted from the settlement as well as (b) of the manner in which that fee will be remitted to the lawyer; (2) *ask* the client if that amount and its payment mode are acceptable; and (3) *advise*[27] the client that (a) he/she may either *agree* to the explained fee terms and *waive* the right to a fee-quantum hearing **or** *request* that the fee-amount dispute be set for a post-settlement adversarial hearing and (b) absent a claimant's waiver *and sans* his/her request for a

deferred post-settlement hearing, the trial tribunal *will at once proceed* to hear and decide the ancillary fee-quantum issue.[28] The current practice of not having a judge present to hear the settlement testimony need not be disturbed, although it should be made clear that—as a point of every *lawyer's duty*—all § 84 cases should *be referred directly to the judge* once it becomes apparent that the claimant *will not* waive the adversarial hearing on the lawyer's ancillary claim for a fee.

## (1) *The Legal Characteristics Of A Lawyer's Ancillary Fee–Quantum Claim*

¶ 12 A controversy between the claimant and his lawyer over the quantum of counsel fee to be paid out of the achieved accord is *ancillary* to the settlement.[29] In the absence

A. *No Joint Petition settlement of a claim shall be approved* by the Court *unless* a record of the terms and conditions of the settlement and the claimant's understanding concerning the effect of the settlement *is made and transcribed . . . .*
* * *
D. The transcript of the Joint Petition settlement shall be prepared and provided *within ninety (90) days . . . ."*
(emphasis supplied).

25. The § 84 settlement hearing was held *16 February 1996* and the approval order entered one month later on *March 12.* The settlement hearing's transcript was filed *4 April 1996. Although the claimant's March 6 letter-request for an adversarial hearing was filed before the approval order's entry, it was not reached for disposition until a year later.*

26. We glean from the record and from the transcript that there was here *neither* an on- or off-the-record waiver *nor* any advice given to the claimant that he was entitled to a separate hearing on the fee-quantum controversy.

27. *See* Restatement (Third) of the Law Governing Lawyers § 31, Comment (adopted May 1998)("c. Informing and consulting with a client. . . . The lawyer must also communicate developments that significantly affect the client-lawyer relationship, for example issues concerning . . . a conflict of interest."); Restatement (Third) of the Law Governing Lawyers § 201 (adopted May 1998)(" . . . A conflict of interest exists if there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by the lawyer's own interests. . . ."). *See generally* Deborah A. DeMott, The Lawyer As Agent, 67 Fordham L.Rev. 301, for a discussion of the significance of agency in the lawyer-client

relationship as well as its limitations, as affected by a lawyer's professional duty of loyalty to the client.)

28. The compensation bar is keenly aware of the dilemma encountered when a joint-petition claimant disputes the fee's quantum and a separate adversarial hearing might have to be called for. *Because that kind of hearing is known to be the claimant's due,* current MCLE materials suggest how a conflict might be avoided. *See* MCLE materials prepared for Workers' Compensation Seminar, segment on *Settlements,* authored by Larry G. Taylor and Wilson N. Jones, Publication No. 410, Spring 1991, pg. VI–9. Lawyers are instructed that in the course of joint-petition settlement examinations they should *always* pose the following question to the client:
Are you willing to give up the right to have a *separate hearing* to determine the amount of your attorney's fee?
*Id.* One of the two authors, whose names appear on the bar publication in question, is the claimant's lawyer in this case. It should hence be viewed of some moment that *no such question was posed at the joint-settlement hearing under review here.* **Had the critical question been asked and answered in the affirmative, there would be today considerable strength to the view that claimant did in fact waive his right to a hearing on the ancillary fee claim and consent to the fee regime prescribed in the approval order.**

29. A physician's claim to compensation for services rendered to an injured worker represents a typical ancillary post-settlement claim if the physician was not a party to the settlement agreement. *Schlessman, supra* note 13 at 414. A claimant's lawyer is included in the class of persons whose fee claim, if disputed, must be treated as merely ancillary to the principal demand against the employer. *Conrad, supra* note 13 at 862.

of a claimant's on- or off-the-record waiver,[30] the trial tribunal need not treat the lawyer's fee-quantum issue as an indivisible part of the settlement proceeding but may sever it for later consideration and treatment as ancillary to the worker's claim.

¶ 13 Where, as here, the record reveals *no* waiver (of right to a fee-quantum decision produced by adversary process), a counsel-fee award recited in the settlement order constitutes no more than a *tentative trial tribunal's allocation* to the lawyer of the statutorily allowable maximum compensation. The actual fee quantum to be allowed remains a disputed issue yet to be resolved.[31]

### (2) The Fee–Quantum Inquiry

¶ 14 Unless a waiver-resisting claimant *will*—after receiving a trial judge's on-the-record warning that at the next stage of the tribunal's proceedings the claimant's own lawyer (rather than the respondent-employer) will be confronting him/her as an adversary—*request*, upon good cause shown, a deferred post-settlement hearing on the issue, the trial tribunal is duty-bound to proceed at once to hear and decide the ancillary dispute over the amount to be awarded the lawyer.

No fee-quantum controversy (between the claimant and his lawyer) should ever be allowed to cloud, delay, impair or interfere with a pending § 84 settlement's completion. Nothing less is both parties' due when the claimant should confront a potential challenge from his own lawyer—a professional advocate ordinarily expected to identify with the client's cause until the very end of litigation process.[32]

¶ 15 Because there is in this cause absolutely no paper trail of this claimant's on-the-record [33] or off-the-record [34] waiver of a fee-dispute inquiry, his plea in the March 6 letter and in the instant proceeding for review—that he is entitled to an adversarial hearing—indicates *neither a retraction of, nor a retreat from,* an earlier-assumed contrary position. *In sum, this record is silent on claimant's earlier waiver.*[35] *Waiver is a sine qua non of the trial tribunal's power to determine, sans separate hearing, the fee to be deducted from the award.* The transcript does not disclose that the claimant had ever been informed of his rights and knowingly relinquished them.[36] *His critical waiver may not be found from a silent record.*[37]

---

**30.** An *"on-the-record"* waiver is one that is apparent from an inspection of the trial tribunal's "face of the proceedings" (a counterpart of the district court's "judgment roll"). *Union Indemnity Co. v. Saling,* 166 Okl. 133, 26 P.2d 217, 226 (1933); *Dyke v. Saint Francis Hosp., Inc.,* 1993 OK 114, ¶ 22, 861 P.2d 295, 302–303 (an examination of the entire "face of the proceedings" constitutes the sole method for proving the effect or meaning of an award). For the distinction between *waiver* and *consent,* see *supra* note 23.

**31.** *Conrad, supra* note 13 at 862; *Sanitary Land Fill Co. v. Pearson,* 1958 OK 226, ¶ 8, 330 P.2d 576; *Becknell v. State Indus. Court,* 1973 OK 90, ¶ 28, 512 P.2d 1180, 1184; *James v. State Indus. Comm.,* 1957 OK 41, ¶ 4, 308 P.2d 271.

**32.** The only true adversaries in a § 84 settlement proceeding are the claimant and the employer. No adversarial position may be assumed *at that stage either* by the claimant *or* his lawyer, one toward the other.

**33.** For an explanation of an *"on-the-record"* waiver, see *supra* note 30. An on-the-record waiver is much to be preferred to one that is off-the-record. The former provides a facial indicium of the fee's orderly adjudication.

**34.** An *"off-the-record"* waiver is one that is *not apparent* from the face of proceedings but is disclosed only by the transcript of the § 84 settlement hearing. *Saling, supra* note 30 at 226. A transcript of evidentiary proceedings in the district court forms no part of the judgment roll (or of its counterpart in the Workers' Compensation Court, the *face of the proceedings* ). *See Salyer v. Nat'l. Trailer Convoy, Inc.,* 1986 OK 70, 727 P.2d 1361, 1362 n. 3. The transcript does not disclose here that the claimant had ever been advised of and knowingly relinquished his right to a fee-quantum hearing.

**35.** For the meaning of "waiver", see *supra* note 23.

**36.** Claimant's testimony (at page nine of the settlement hearing's transcript), which shows that he "had an understanding" with his lawyer about the fee to be deducted, *utterly fails to disclose that* (a) *he knew the precise impact of the crucial agreement in dollars and cents;* (b) *intentionally gave up* his right to that amount and (c) *was aware* of his right to an adversarial post-settlement hearing on that issue.

**37.** *Enochs v. Martin Properties, Inc.,* 1997 OK 132, ¶ 6, 954 P.2d 124, 126; *Hamid v. Sew Original,* 1982 OK 46, ¶ 6, 645 P.2d 496, 497.

## B.

### Unless There Is An On- or Off–The–Record Waiver By Counseled Claimants of An Adversarial Fee–Quantum Hearing, Copies of Joint–Petition Approval Orders Must Be Mailed To Represented Claimants As Well As To Their Lawyers.[38]

¶ 16 We glean from the record that the trial tribunal does not mail copies of its joint-petition approval orders either to the unrepresented parties or to counsel of record. This court is free to take judicial notice of any jurisdiction-impacting feature of internal operations in a judicial institution that, by the command of § 6,[39] stands as its administrative subordinate.

¶ 17 Unless an on- or off-the-record waiver of an adversarial fee-quantum hearing is present, orders approving joint-petition settlements must be mailed not only to counsel of record but also to every represented claimant.[40] A claimant's current mailing address should be provided for the record through counsel's pre-approval examination. The current forms for a joint petition and for an order approving settlement should be amended to include—in the former document—that the claimant has *tendered a waiver* of his right to a hearing on the fee-

quantum issue (or requested a hearing on that issue) and that the claimant has been fully informed of his rights. The revised order form should make reference to the waiver's tender and set out that it was either approved by the court or rejected by the claimant. In the latter case the trial tribunal (1) may at once proceed to hear and decide the dispute over the amount to be awarded *unless* (2) a fully informed claimant requests a deferred fee-quantum hearing, in which event there should be an order setting the fee issue for a post-settlement hearing.

## C.

### The Trial Tribunal Should Implement A System For Monitoring Filings In Claims That Stand *Sub Judice* In The § 84 Settlement Process

¶ 18 The trial tribunal seems to have no mechanism to monitor, in cases which stand *sub judice* for a § 84 settlement approval, those filings which affect the trial tribunal's actions in a then-pending settlement proceeding. *We glean this deficiency from the record. It reveals that claimant's critical letter, placed on file 6 March 1996, failed to receive a hearing until one year later.*

---

**38.** The *safest* practice would call for routine mailing of § 84 approval orders to counsel of record and to all claimants, whether represented or not.

**39.** This court is duty-bound to inform itself *sua sponte* by taking judicial notice of *internal operations* within a judicial institution that is constitutionally placed under its superintending power and managerial control. The Workers' Compensation Court *also stands subject to* the Supreme Court's statutory supervision of rule-making functions. Art. 7 §§ 4, 6, Okl. Const.; 12 O.S. 1991 §§ 2201, 2202; 85 O.S.Supp.1993 § 1.2 E; *see Board of Law Library Trustees v. State*, 1991 OK 122, 825 P.2d 1285, 1289; *Fields v. A & B Electronics.*, 1990 OK 7, 788 P.2d 940; *Green v. Mac's Plating Works*, 1977 OK 71, ¶ 21, 563 P.2d 148, 152; *see also Howerton v. State*, 1982 OK CR 12, ¶ 2, 640 P.2d 566, 567 (quoting *In re Wakefield*, 107 Vt. 180, 177 A. 319, 323 (1935)); *Sinclair Oil & Gas Co. v. Bishop*, 1967 OK 167, ¶ 20, 441 P.2d 436, 441–42; *Ex parte Higgs*, 97 Okl.Cr. 338, 263 P.2d 752, 759–60 (1953).

**40.** *An attorney cannot act as an agent for the client in any matter in which their interests are in conflict.* The lawyer's mission for the client demands that there be absolute loyalty to the

client's cause being pressed against the employer. *A claimant who stands in an adversarial posture may hence challenge the lawyer's authority to bind him as an agent by receiving for him a copy of the court's order. See generally,* DeMott, *supra* note 27. *See also* Comment, Rule 1.7 (*Conflict of Interest*), Oklahoma Rules of Professional Conduct [ORPC], 5 O.S.1991, Ch. 1, App. 3–A ("Loyalty is an essential element in the lawyer's relationship to a client.... Loyalty ... to a client is ... impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests ... The lawyer's own interests should not be permitted to have adverse effect on representation of a client...."). *See, e.g., People v. Henderson*, 967 P.2d 1038, 1040 (Colo.1998)(a lawyer's representation of a client in a bankruptcy suit is materially limited by his own interest as a creditor in collecting his attorney's fee). "Combining the roles of advocate and witness ... can involve a conflict of interest between the lawyer and client...." Comment, ORPC Rule 3.7 (*Lawyer As Witness*); *see, e.g., Crussel v. Kirk*, 1995 OK 41, ¶ 11, 894 P.2d 1116, l120; *Boyd v. State*, 1992 OK CR 40, ¶ 21, 839 P.2d 1363, 1369–70 (the role of an advocate and witness should be kept separate).

¶ 19 Claimant's letter should have at once been called to the attention of the judge to whom the settlement proceeding was then assigned. It is critical that a system be instituted to monitor cases awaiting § 84 approval's entry in order that every filing which affects the issues then before the court may be called to the attention of the judge to whom the case stands assigned.

¶ 20 In sum, I would today invite the trial tribunal's attention to all the disclosed infirmities and call for immediate promulgation of ameliorative rules. The rule changes would effectively fill the present-day procedural vacuum. Nay, they would transform *instanter* a § 84 approval order into a *final adjudication* not only of the claim (against the employer) but also of the claimant's adversarial rights *vis-a-vis* his/her lawyer.

### V

### SUMMARY

¶ 21 I would declare today that (1) the trial tribunal's failure to mail to the claimant a copy of its § 84 approval order prevented the twenty-day jurisdictional bar from being triggered; the fee-quantum issue hence lay within the range of the trial tribunal's then-retained jurisdiction and (2) the Workers' Compensation Court should correct the flaws now present in its internal process to better ensure stability and finality for its orders that approve a § 84 settlement.

¶ 22 The counsel-fee issue should, on remand, be treated as both severable and severed from the remainder of the approval order. Today's pronouncement—that this controversy over the fee is still pending below—clearly leaves undisturbed the terms of the employer/employee settlement. That approved accord remains unassailed and is hence legally unclouded. It stands protected from re-examination below, although the bar of finality cannot, on this record, be extended to embrace the dispute between claimant and his lawyer. In short, *the twenty-day jurisdictional cutoff is not invocable here by the lawyer against his client to defeat the latter's plea for a judicial determination of the fee's quantum in an ancillary post-settlement proceeding to be conducted between the claimant and his counsel of record as forensic adversaries.*